**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| TEXAS NATIONALIST MOVEMENT and DANIEL MILLER, individually and on behalf of all other similarly situated | § § § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 1:22-CV-572 |
| | § | |
| | § | REMOVED FROM 58TH DISTRICT |
| META PLATFORMS, INC. | § | COURT OF JEFFERSON COUNTY |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. §1404(a)**

# TABLE OF CONTENTS

**Page**


**I. Introduction** .......... **1**

**II. Background** .......... **1**

A. Meta and Its Online Services .......... **1**

B. H.B. 20 Attempts to Curtail Meta's Editorial Judgments .......... **2**

C. Plaintiffs' Lawsuit and Requests for Relief .......... **3**

**III. Argument** .......... **5**

**IV. Conclusion** .......... **9**

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*,
571 U.S. 49 (2013) ........ *passim*

*In re Automated Collection Techs., Inc.*,
156 S.W.3d 557 (Tex. 2004) ........ 8

*In re Autonation, Inc.*,
228 S.W.3d 663 (Tex. 2007) ........ 8, 9

*In re Bloom Bus. Jets, LLC*,
522 S.W.3d 764 (Tex. App. 2017) ........ 8

*BMG Direct Mktg., Inc. v. Peake*,
178 S.W.3d 763 (Tex. 2005) ........ 8

*In re Boehme*,
256 S.W.3d 878 (Tex. App. 2008) ........ 8

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012) ........ 7

*Dolin v. Facebook, Inc.*,
289 F. Supp. 3d 1153 (D. Haw. 2018) ........ 6

*Hayes v. Facebook*,
2019 WL 8275335 (D. Colo. Mar. 6, 2019) ........ 6

*KeyCity Cap., LLC v. Davenport Invs., LLC*,
2022 WL 581146 (N.D. Tex. Feb. 25, 2022) ........ 1, 5, 7, 9

*Kidstar v. Facebook, Inc.*,
2020 WL 4382279 (D.N.J. July 31, 2020) ........ 6

*Loomer v. Facebook, Inc.*,
2020 WL 2926357 (S.D. Fla. Apr. 13, 2020) ........ 6

*Loveland v. Facebook*,
2021 WL 1734800 (E.D. Pa. May 3, 2021) ........ 6

*In re MetroPCS Commc'ns, Inc.*,
391 S.W.3d 329 (Tex. App. 2013) ........ 8

*Mitsui & Co. (USA) v. Mira M/V*,
111 F.3d 33 (5th Cir. 1997) ....................7, 9

*Moates v. Facebook Inc.*,
2021 WL 3013371 (E.D. Tex. May 14, 2021)....................6, 7, 8, 9

*NetChoice, LLC v. Paxton*,
142 S. Ct. 1715 (2022)....................5

*NetChoice, LLC v. Paxton*,
573 F. Supp. 3d 1092 (W.D. Tex. 2021), *vacated and remanded*, 49 F.4th 439 (5th Cir. 2022)....................5

*PCL Civil Constructors, Inc. v. Arch Ins. Co.*,
979 F.3d 1070 (5th Cir. 2020) ....................7

*Prather v. Meta Platforms, Inc.*,
No. 352-332141-22 (352nd Dist. Ct., Tarrant County, April 22, 2022)....................6, 9

*Rogalinski v. Meta Platforms, Inc.*,
No. 8:21-cv-1749 (M.D. Fla. Apr. 22, 2022)....................6

*Soffin v. eChannel Network, Inc.*,
2014 WL 2938347 (S.D. Fla. June 30, 2014) ....................6

*Thomas v. Facebook, Inc.*,
2018 WL 3915585 (E.D. Cal. Aug. 15, 2018)....................6

*Trump v. Facebook, Inc.*,
No. 1:21-cv-22440 (S.D. Fla. Nov. 19, 2021) ....................6

*Welch v. Thompson*,
20 F.3d 636 (5th Cir. 1994) ....................7

**Statutes**

28 U.S.C. §1404(a) ....................1, 5

47 U.S.C. §230....................8

Tex. Civ. Prac. & Rem. Code §143A.001 ....................2

Tex. Civ. Prac. & Rem. Code §143A.002 ....................8

Tex. Civ. Prac. & Rem. Code §143A.003 ....................8, 9

Tex. Civ. Prac. & Rem. Code §143A.007 ....................3

## I. INTRODUCTION

Plaintiffs wish to compel an out-of-state online service provider to disseminate content promoting secession from the Union. In an ordinary case, the Court could simply reject this law-defying request by dismissing Plaintiffs' petition under Rule 12(b). And indeed, that will be the ultimate outcome. As Defendant Meta Platforms, Inc., will explain in its forthcoming motion to dismiss, not only does this Court lack personal jurisdiction over Meta based on allegations of conduct that supposedly occurred in California, but Plaintiffs cannot state a claim under basic principles of Texas law, federal statutory law, and federal constitutional law.

But this Court is not the right forum to decide any of those issues. As Plaintiffs' counsel knows from his previous litigation, only a California court may entertain this dispute because Plaintiffs agreed to a mandatory forum-selection clause. On that basis alone, the Court should simply transfer the litigation under 28 U.S.C. §1404(a) without taking any other action. *See KeyCity Cap., LLC v. Davenport Invs., LLC*, 2022 WL 581146, at *2 (N.D. Tex. Feb. 25, 2022) ("a court can address a transfer motion before addressing subject matter or personal jurisdiction"). Binding Supreme Court precedent permits nothing less. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 59-60 (2013) ("a proper application of §1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases" (quotation omitted)).

## II. BACKGROUND

### A. Meta and Its Online Services

Meta operates a variety of online services and applications, including Facebook. Facebook users can share content on the service and interact with it. That content is diverse and substantial: It is generated by billions of users located throughout the world, uploaded in a variety of media

formats, and spans substantively the entire range of human thought—from the creative, humorous, and political, to the offensive, dangerous, and illegal.

Because of the sheer volume and breadth of this material, Meta has invested significant resources into developing rules and standards to moderate and organize the user-created content on its service. Although "Meta wants people to be able to talk openly about the issues that matter to them," it also recognizes that "the internet creates new and increased opportunities for abuse." Meta Transparency Center, *Facebook's Community Standards* (last visited Dec. 4, 2022), https://bit.ly/3tdKbtn. It therefore restricts several categories of content that it deems objectionable, such as hate speech, bullying, and harassment. *Id.*, *Hate Speech* (last visited Dec. 4, 2022), https://bit.ly/3LYTwxA; *id.*, *Bullying and Harassment* (last visited Dec. 4, 2022), https://bit.ly/3phMEBJ. Those policies are explained in Facebook's Community Standards, which users agree to follow under Facebook's Terms of Service.

**B. H.B. 20 Attempts to Curtail Meta's Editorial Judgments**

Meta makes billions of editorial decisions each day, so it is inevitable that some people will disagree with Meta's judgments and criticize them. Others will agree with such judgments and praise them. The First Amendment and its preferred remedy of more speech expect nothing less. But in September 2021, Texas took a different tack: It enacted H.B. 20, which tries to punish only Meta and certain other companies like it for enforcing their standards. As relevant here, Section 7 of the Act says that select "social media platform[s]" in many cases cannot "censor"—*i.e.*, "block, ban, remove, deplatform, demonetize, de-boost, restrict, [or] deny equal access or visibility to"—"a user, a user's expression, or a user's ability to receive the expression of another person based on: (1) the viewpoint of the user or another person; (2) the viewpoint represented in the user's expression; [or] (3) a user's geographic location in this state or any part of this state." Tex. Civ. Prac. & Rem. Code ("TCPRC") §§143A.001(1), 143A.002(a)(1)-(3). Users who can

demonstrate that a social media platform has "violate[d] th[e law] with respect to the user" may seek injunctive relief, penalties, and attorney's fees. *Id.* §143A.007(a), (b).

### C. Plaintiffs' Lawsuit and Requests for Relief

The Texas Nationalist Movement ("TNM") is a nonprofit association that seeks Texas' secession from the United States. *See* Meta Ex. 1, Amended Petition ("Am. Pet.") ¶¶6, 15. Daniel Miller is the organization's president. *See id.* at Am. Pet. Ex. A. TNM has been a Facebook user since June 2010, and Daniel Miller has been a user since June 2015. *See* Meta Ex. 2, Declaration of Jennifer Pricer ("Pricer Decl.") ¶¶8, 12.

Meta requires all users registering a new account to agree to its Terms of Service. *Id.* ¶3. To complete the registration process, users must confirm that they have read and agree to the Terms. *Id.* ¶4. At all times since June 2010, Meta's Terms have included a forum-selection clause identifying California as the required forum for all claims arising out of or relating to Meta's Terms or Meta's products. *Id.* ¶7. Meta's forum-selection clause in June 2010 stated:

> You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook exclusively in a state or federal court located in Santa Clara County. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions. You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims.

*Id.* ¶10 & Ex. N §15(1).

Similarly, its forum-selection clause in June 2015 stated:

> You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such claims. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions.

*Id.* Ex. G §15.

Both in June 2010 and June 2015, Meta's Terms also allowed Meta to modify the Terms. In June 2010, the Terms stated:

> We can change this Statement if we provide you notice (by posting the change on the Facebook Site Governance Page) and an opportunity to comment. To get notice of any future changes to this Statement, visit our Facebook Site Governance Page and become a fan.

*Id.* Ex. N §13(1).

In June 2015, the Terms stated:

> We'll notify you before we make changes to these terms and give you the opportunity to review and comment on the revised terms before continuing to use our Services …. Your continued use of the Facebook Services, following notice of the changes to our terms, policies or guidelines, constitutes your acceptance of our amended terms, policies or guidelines.

*Id.* Ex. G §13.

Meta's current Terms include the following forum-selection clause:

> You and Meta each agree that ***any claim, cause of action, or dispute*** between us that arises out of or relates to these Terms or your access or use of the Meta Products ***shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County***. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions

*Id.* Ex. A §4(4) (emphases added). The "Meta Products" include "Facebook, Messenger, and the other products, features, apps, services, technologies, and software" that Meta offers. *Id.* Ex. A at 1.

Meta's current Terms also notify users that Meta may modify the Terms, and that continued use of Facebook constitutes acceptance of those updated Terms:

> We work constantly to improve our services and develop new features to make our Products better for you and our community. As a result, we may need to update these Terms from time to time to accurately reflect our services and practices, to promote a safe and secure experience on our Products and services,

> and/or to comply with applicable law. Unless otherwise required by law, we will notify you before we make changes to these Terms and give you an opportunity to review them before they go into effect. Once any updated Terms are in effect, you will be bound by them if you continue to use our Products.

*Id.* Ex. A §4(1).

Plaintiffs filed their initial petition in Texas state court on November 14, 2022, and they amended it on November 28 in a partial attempt to avoid federal jurisdiction. *E.g.*, Am. Pet. ¶¶5, 62 (purporting to limit attorney's fees); *see also* Paul Davis, *Uncancelled*, 43:52-44:05; 44:34-42; 53:40-55 (Nov. 22, 2022) (discussion with Plaintiff Daniel Miller about methods for evading jurisdiction). The petition alleges that "Meta has censored Plaintiffs" and other users "because of their viewpoints … by restricting their ability to post the TEXITnow.org link."[1] *Id.* ¶2. This link purportedly "points to TNM's homepage." *Id.* ¶14. Plaintiffs claim that "[n]othing about TNM's mission or the TEXIT process" (*i.e.*, secession from the United States) "violates the Facebook Community Standards." *Id.* ¶17. Instead, Plaintiffs believe that Meta's supposed censorship of TNM materials violates Texas's novel (and currently-enjoined)[2] social-media censorship law and impairs their "First Amendment freedoms." *Id.* ¶¶47, 53-56 (quotation omitted). As a remedy, they ask for immediate and permanent injunctive relief, a declaratory judgment, attorney's fees, and statutory penalties. *Id.* ¶¶48, 50-51, 61-62

## III. ARGUMENT

This Court should do nothing more with this case than transfer it to the Northern District of California under 28 U.S.C. §1404(a). *See KeyCity*, 2022 WL 581146, at *2 & nn.5-6 ("a court

---

[1] The term "TEXIT" is a play on the term "BREXIT," and refers to TNM's secession plans. Am. Pet. ¶¶15-16.

[2] The Western District of Texas entered a preliminary injunction several months ago, which is still in place because the Fifth Circuit stayed its order reversing the injunction. *See* Meta Ex. 3 (Fifth Circuit Order); *NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092, 1117 (W.D. Tex. 2021), *vacated and remanded*, 49 F.4th 439 (5th Cir. 2022). That decision followed the Supreme Court's previous vacatur of the Fifth Circuit's initial stay of the district court's injunction. *See NetChoice, LLC v. Paxton*, 142 S. Ct. 1715 (2022).

can address a transfer motion before addressing subject matter or personal jurisdiction") (collecting cases). When Plaintiffs decided to use Facebook, they accepted Meta's Terms of Service. Those Terms unequivocally mandate litigation in California: "***[A]ny*** claim, cause of action, or dispute between us that arises out of or relates to these Terms or your access or use of the Meta Products ***shall be resolved exclusively*** in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Pricer Decl. at Ex. A §4(4) (emphases added)

Plaintiffs are well aware that they "filed suit in violation of [this] forum-selection clause." *Atl. Marine*, 571 U.S. at 52. Not only does the petition recognize the clause, *see* Am. Pet. ¶11, but earlier this year, a Texas court enforced Meta's "forum-selection agreement" ***in a case under the same novel Texas law brought by the same Plaintiff's counsel here***. *See* Meta Ex. 4, *Prather v. Meta Platforms, Inc.*, No. 352-332141-22 (352nd Dist. Ct., Tarrant County, April 22, 2022) ("Prather may refile his case in a proper court in California"); *see also* Am. Pet. ¶34 (referencing that lawsuit); Brad Kutner, *Texas Secessionists Sue Meta Platforms After Website Banned from Facebook* (Nov. 14, 2022), https://bit.ly/3XWFjY9 ("[Attorney] Davis thinks the Texas law can trump Facebook's terms of service"). The Texas court's decision was hardly an outlier. In recent years, countless courts throughout the country—including in this district—have had little trouble reaching similar conclusions. *E.g.*, *Moates v. Facebook Inc.*, 2021 WL 3013371, at *1 (E.D. Tex. May 14, 2021).[3]

[3] *See also, e.g.*, Meta Ex. 5, *Rogalinski v. Meta Platforms, Inc.*, No. 8:21-cv-1749 (M.D. Fla. Apr. 22, 2022), ECF No. 31 at 1-2 (For the reasons stated by Meta …, [t]his action is TRANSFERRED to the Northern District of California"); Meta Ex. 6, *Trump v. Facebook, Inc.*, No. 1:21-cv-22440 (S.D. Fla. Nov. 19, 2021), ECF No. 108 at 11-16; *Loomer v. Facebook, Inc.*, 2020 WL 2926357, at *1-3 (S.D. Fla. Apr. 13, 2020); *Soffin v. eChannel Network, Inc.*, 2014 WL 2938347, at *1-2 (S.D. Fla. June 30, 2014); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1160 (D. Haw. 2018) ("Under similar circumstances, numerous courts have found Facebook's … forum-selection clause to be valid.") (collecting cases); *Loveland v. Facebook*, 2021 WL 1734800, at *4-6 (E.D. Pa. May 3, 2021); *Kidstar v. Facebook, Inc.*, 2020 WL 4382279, at *3-5 (D.N.J. July 31, 2020); *Hayes v. Facebook*, 2019 WL 8275335, at *2-3 (D. Colo. Mar. 6, 2019); *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D.

This case requires the same result under binding precedent. *See PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020) ("Federal law applies to determine the enforceability of forum selection clauses…."). A forum-selection clause is "presumptively valid," entitled to "controlling weight," and ***must*** be enforced "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52, 62-64; *Mitsui & Co. (USA) v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997). So powerful is this requirement that other considerations—like "the plaintiff's choice of forum" or "the parties' private interests"—are irrelevant. *Atl. Marine*, 571 U.S. at 62-64.

Here, there is no dispute that a mandatory forum-selection clause controls this litigation. Meta's Terms of Service require that "***any*** claim, cause of action, or dispute" against Meta "that arises out of or relates to these Terms or [the] access or use of [Facebook] ***shall be resolved exclusively*** in" California. Pricer Decl., Ex. A §4(4) (emphases added). This language is plainly "mandatory." *See, e.g.*, *Welch v. Thompson*, 20 F.3d 636, 640 n.12 (5th Cir. 1994) ("The term 'shall' is the paradigmatic mandatory word.").[4] And this language obviously applies to these Plaintiffs' claims that Meta limited their abilities to use its services to post content about TEXIT, because such claims "relate[] to" Plaintiffs' "use of" Facebook. *E.g.*, Am. Pet. ¶¶2, 14, 26.

Sure enough, Plaintiffs admit that "Meta's forum selection clause in its user agreement specif[ies] venue in California." *Id.* ¶11. Plaintiffs also predictably fail to dispute that this clause is mandatory, that its language is facially applicable to the current litigation, and that no

---

Cal. Aug. 15, 2018) ("[T]he Court is not aware of any case concluding that the forum selection clause in [Meta's Terms] is invalid."); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900-03 (S.D. Ill. 2012).

4 *See also Moates*, 2021 WL 3013371, at *8 (analyzing Facebook's Terms of Service) ("In California, where a forum selection clause uses the word 'exclusively' or 'exclusive,' the forum selection clause is mandatory."); *KeyCity, LLC*, 2022 WL 581146, at *6 (collecting Texas cases establishing that references to "exclusive venue" or "exclusive jurisdiction" render a clause mandatory).

"extraordinary circumstances" justify keeping this case in Texas.[5] Instead, all Plaintiffs say is that the clause is somehow "void and unenforceable pursuant to [TCPRC §]143A.003 and as a matter of strong Texas public policy." *Id.* ¶¶11-13.

This lone argument gets the law backward at every turn. In reality, Texas courts overwhelmingly ***require*** enforcement of forum-selection clauses, consistent with the "public policy strongly favoring the freedom of parties to contract." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex. 2005). "[E]ven where Texas statutory provisions specify the application of Texas law," a forum-selection clause remains enforceable unless the statute specifically "requires suit to be brought or maintained in Texas." *In re Autonation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007). So strong is this preference in favor of forum-selection clauses that "[t]he Texas Supreme Court has consistently granted petitions for writ of mandamus to enforce [them]." *In re MetroPCS Commc'ns, Inc.*, 391 S.W.3d 329, 338 (Tex. App. 2013); *see also, e.g.*, *In re Autonation*, 228 S.W.3d at 667 (collecting cases); *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559-60 (Tex. 2004); *In re Bloom Bus. Jets, LLC*, 522 S.W.3d 764, 771 (Tex. App. 2017); *In re Boehme*, 256 S.W.3d 878, 880 (Tex. App. 2008).

These Plaintiffs point to nothing that "requires [their] suit to be brought or maintained in Texas." *In re Autonation*, 228 S.W.3d at 669. Nor could they, because no such law exists. Plaintiffs merely observe that H.B. 20 indicates a "fundamental interest in protecting the free

---

5 Nor could Plaintiffs satisfy their heavy burden to show that factors "unrelated to the convenience of the parties" "overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 62-64, 67. The Northern District of California is clearly an adequate alternative forum—and one that has personal jurisdiction over Meta to boot. *See Moates*, 2021 WL 3013371, at *6 ("federal judges routinely apply the law of a State other than the State in which they sit") (quoting *Atl. Marine*, 571 U.S. at 67). That court is more than capable of resolving the claims in this case, which by Plaintiffs' own admission present pervasive questions of federal law. *Id.*; *see also, e.g.*, Am. Pet. ¶¶18-20, 23-24, 53-56 (raising various federal statutory and constitutional issues); 47 U.S.C. §230 (directly addressing the liability of internet platforms). And Plaintiffs even allege that the Meta decisions and policies at issue were ***made in California***. Am. Pet. ¶13.

exchange of ideas" and purports to prevent "waiver … of [its] protections." *See* Am. Pet. ¶¶11-12 (quoting 2021 Tex. Sess. Law Serv. 2nd Called Sess. Ch. 3 (H.B. 20)); TCPRC §143A.003. But none of those provisions mandates a Texas forum. Rather, H.B. 20 merely speaks to "waiver" of its ***substantive*** protections, while saying nothing about ***which courts*** are competent to apply those protections. *See* §143A.003; *compare, e.g.*, *Mitsui*, 111 F.3d at 36 (the Supreme Court has distinguished substantive "duties which c[annot] be abrogated by contract … from the ***mechanisms*** for enforcement of those duties" (emphasis added)); *Moates*, 2021 WL 3013371, at *6 ("It is unpersuasive to argue that a federal judge sitting in California applying Texas law violates Texas public policy."); Meta Ex. 4, *Prather*, No. 352-332141-22 ("Prather may refile his case in a ***proper*** court in California" (emphasis added)). For that reason alone, the forum-selection clause must control. *In re Autonation*, 228 S.W.3d at 669.

But that is not all. Far from Plaintiffs' atextual suggestion that H.B. 20 requires litigation in Texas, the law actually makes clear that non-Texas courts are perfectly capable of applying to its provisions. Section 143A.003, in particular, contemplates that "a court ***or arbitrator***" may be tasked with deciding cases—which is exactly the opposite of a statement that only a Texas court will suffice. (Emphasis added.) This open-ended reference to potential adjudicators, coupled with Texas' overarching and overriding preference for the parties' contractual forum, leaves no reason to question the validity of Meta's forum-selection clause.

## IV. CONCLUSION

The path forward is simple: the Court should transfer this case to the Northern District of California. *See KeyCity*, 2022 WL 581146, at *2 (transferring before reaching other issues). Any other approach would contravene settled Supreme Court precedent, improperly excuse Plaintiffs from a "controlling" obligation they freely assumed, and encourage future "violation[s] of the forum-selection clause." *Atl. Marine*, 571 U.S. at 51, 67.

Dated: December 9, 2022 Respectfully submitted,

*/s/ J. Thad Heartfield*_________


**THE HEARTFIELD LAW FIRM**
J. Thad Heartfield
State Bar No. 09346800
thad@heartfieldlawfirm.com
M. Dru Montgomery
State Bar No. 24010800
dru@heartfieldlawfirm.com
2195 Dowlen Road,
Beaumont, TX 77706
Telephone: 409-866-3318
Facsimile: 409-866-5789

**KIRKLAND & ELLIS LLP**
Taj J. Clayton, P.C.
taj.clayton@kirkland.com
State Bar No. 24050427
4550 Travis Street
Dallas, Texas 75205
Telephone: 214-972-1757
Facsimile: 214-972-1771

*Attorneys for Meta Platforms, Inc.*


**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 9, 2022.

*/s/ J. Thad Heartfield*_____________
J. Thad Heartfield

**CERTIFICATE OF CONFERENCE**

Counsel for Defendant certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h), and the motion is opposed. The personal conference for opposed motions, as required by Local Rule CV-7(h), was conducted via telephone on December

9, 2022 between J. Thad Heartfield on behalf of the Defendant and Paul M. Davis for Plaintiff.

The Plaintiff opposes this motion, leaving an open issue for the court to resolve.

*/s/ J. Thad Heartfield*
J. Thad Heartfield